UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH DIAZ<br>*Plaintiff*, | )<br>)<br>) | 3:22-cv-00822 (KAD) |
| v. | )<br>) | |
| UNITED STATES OF AMERICA<br>*Defendant*. | )<br>) | MAY 18, 2023 |

MEMORANDUM OF DECISION
RE: 28 U.S.C. § 2255 PETITION (ECF NO. 1)

Kari A. Dooley, United States District Judge:

After entering a guilty plea on February 17, 2021, Petitioner Joseph Diaz was convicted by judgment dated June 21, 2021 of (1) possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) & (c)(2). Petitioner was sentenced to a period of incarceration of 18 months on the first count and 60 months on the second count, to be served consecutively, for a total effective sentence of 78 months.[1] On June 22, 2022, Petitioner filed the instant Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. Petitioner challenges his conviction and sentence, asserting that he was denied effective assistance of counsel during both the pretrial and sentencing phases of his criminal proceedings. The Government opposes the Petition. For the reasons set forth below, the Petition is DENIED.

---

[1] Following the period of incarceration, Petitioner was sentenced to 48 months of supervised release subject to mandatory, standard, and special conditions of release. *See* Judgment at 1–2, 4, *United States v. Diaz*, No. 3:19-cr-00059 (KAD) (D. Conn. June 22, 2021). Petitioner was ordered to pay a special assessment of $200.00 and was ordered to forfeit one Ruger, Model LCP, .380 caliber pistol bearing serial number 371764228 and one Ruger, Model SR22P, .22 caliber pistol bearing serial number 366-34756; ammunition associated with those firearms; and a total of $4,204.00 in United States currency. *Id.* at 2, 6.

**STANDARD OF REVIEW**

"Pursuant to § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence [or conviction] on four grounds: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack.'" *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (brackets omitted) (quoting 28 U.S.C. § 2255(a)). These are "jurisdictional [or] constitutional" issues that create "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989). A federal prisoner may also use § 2255 to attack his conviction because "[f]or the purposes of § 2255, the term 'sentence' refers to *both* the prisoner's sentence and underlying conviction." *Fermin v. United States*, 859 F. Supp. 2d 590, 596 (S.D.N.Y. 2012) (emphasis in original) (citing *Johnson v. United States*, 623 F.3d 41, 45 (2d Cir. 2010)).

Petitioner bears the burden of proving that a miscarriage of justice occurred. *Hoskins*, 905 F.3d at 103 & n.6; *see also Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995) ("The burden therefore falls upon petitioners to demonstrate their entitlement to relief under § 2255 . . . ."). In evaluating a petitioner's claim, "a district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). "Indeed . . . when the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner." *Id.*

**Facts and Procedural History**[2]

On February 13, 2019, investigators from the FBI Task Force were conducting surveillance in an unrelated investigation in Hartford, Connecticut when they observed a dark-colored Chevy Impala maneuver and stop next to a gray BMW. PSR ¶ 9. The Chevy operator, later identified as Petitioner, handed the BMW operator what appeared to be white wax paper sleeves in exchange for an unknown amount of United States currency. *Id.*

After the operators of both vehicles left the scene, Hartford police officers conducted a traffic stop of the BMW. *Id.* ¶ 10. During the stop, the officers searched the vehicle and discovered white wax paper sleeves containing fentanyl and heroin, which had been supplied by Petitioner. *Id.* The officers directed the operator to order two more bundles of heroin from Petitioner, and the operator complied. *Id.* ¶ 11. Petitioner arrived at the agreed-upon location for the second transaction in a different vehicle and completed the transaction. *Id.*

Once the transaction was completed and Petitioner left the scene, the investigators initiated a traffic stop of Petitioner. *Id.* As the investigators removed Petitioner from his vehicle, he advised them that he had a firearm in his right coat pocket: a Ruger .380 pistol, for which he had a permit. *Id.* He also had currency and three cellphones on his person; an additional cell phone and more currency, totaling $1,704.00, were found inside of the vehicle. Mem. in Supp. at 4–5. In a black bag on the front seat of his vehicle, the investigators discovered Petitioner's pistol permit and approximately 700 wax paper sleeves containing fentanyl and suspected heroin.[3] *Id.*; PSR ¶ 11. Petitioner was then arrested and transported to the Hartford Police Station. PSR ¶ 11.

---

[2] At sentencing, absent objection, the Court adopted the factual content of the Presentence Investigation Report ("PSR") prepared by the United States Probation Office as the Court's finding of fact. *See* PSR, *Diaz*, No. 3:19-cr-00059 (D. Conn. May 19, 2021); Sentencing Tr. at 3:25–4:14, *Diaz*, No. 3:19-cr-00059 (D. Conn. Sep. 10, 2021). The facts set out in this section are drawn from those set out in the PSR, as well those which Petitioner alleges that he "agreed and stipulated" to in his Memorandum in Support of the instant Petition. *See* Mem. in Supp. at 3, ECF No. 6.
[3] According to the PSR, the investigators claimed that Petitioner advised them that his permit was located in the bag, whereas Petitioner, through counsel, claimed that the permit was in his front pocket. PSR ¶ 11.

3

While in custody, Petitioner consented to a search of his residence in Newington, Connecticut. *Id.* ¶ 12. At the residence, officers observed Petitioner's father, Jose Diaz, quickly exiting the rear door of the residence. Mem. in Supp. at 5. When approached, he dropped a black plastic bag and a fanny pack containing over 4,000 bags of suspected fentanyl. *Id.* Inside of the master bedroom of the residence, officers found a safe containing approximately $2,500 and both packaged and unpackaged fentanyl. *Id.* at 6. In a dresser, officers found a Ruger .22 caliber pistol with a loaded magazine. *Id.* On the closet floor, they found firearm transfer paperwork, firearm ammunition, and a gun case containing magazines, a pistol grip, and a gun lock. *Id.* Petitioner's father consented to a search of his phone, and on his phone screen was an unopened text message from Petitioner reading, "Go now. Everything." *Id.*

On February 28, 2019, a federal grand jury returned a four-count indictment charging Petitioner with one count of conspiracy to possess with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(B)(vi) (Count One);[4] one count of possession with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(vi) (Count Two); one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (Count Three); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Four). Indictment at 1–3, *Diaz*, No. 3:19-cr-00059 (D. Conn. Feb. 28, 2019). At all relevant times during the criminal proceedings, Petitioner was represented by then-Assistant Federal Defender Moira Buckley. *See* Mot. to Vacate, Set Aside, or Correct Sentence ("Mot. to Vacate") at 11, ECF No. 1.

---

[4] On Count One, Petitioner faced a maximum period of incarceration of 40 years and a mandatory minimum period of incarceration of 5 years.

On February 17, 2021, Petitioner entered a guilty plea on Counts Three and Four pursuant to a written plea agreement. *See* Change of Plea Hr'g Tr. ("COP Tr.") at 31:4–15, *Diaz*, No. 3:19-cr-00059 (D. Conn. Jan. 16, 2023); Plea Agreement at 1, *Diaz*, No. 3:19-cr-00059 (D. Conn. Feb. 17, 2021). In exchange for Petitioner's guilty plea on those counts, the Government agreed to move to dismiss the remaining two counts of the indictment and recommend that the Court reduce Petitioner's adjusted offense level under the Sentencing Guidelines by three levels. Plea Agreement at 4–5, 9. The parties agreed that Petitioner's sentencing guidelines range was 106 to 117 months of imprisonment, which included a 60-month mandatory consecutive sentence for Count Four. *Id.* at 6.

During the change of plea hearing, the Court engaged Petitioner and Attorney Buckley in an extensive colloquy to determine that Petitioner's plea was knowing and voluntary. *See* COP Tr. at 2:18–32:9. During the colloquy, Petitioner acknowledged that he had had enough time to consult with Attorney Buckley and was satisfied with her representation. *Id.* at 7:7–13. The Court and Petitioner also had the following exchange:

> THE COURT: Have you read the Indictment that contains the written charges against you?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And have you discussed the charges with your attorney?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And did Attorney Buckley discuss with you what I'm going to call the elements of these offenses—and that is, what the Government would have to prove if the case were to proceed to trial?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And did she discuss with you the nature and scope of the Government's evidence? And by that, I would include things like who the witnesses might be, what those witnesses would likely

5

> say, whether there's physical evidence, contraband, things of that nature?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 8:10–9:1. Attorney Buckley confirmed that she and Petitioner had such discussions. *Id.* at 9:2–3.

The Court also asked the Government to set forth the elements of the offenses. *Id.* at 23:15–18. Relevant to Count Four, the Government stated:

> [T]he Government would be required to prove, first, the Defendant committed the drug trafficking crime alleged in Count Three—and, specifically, that he possessed Fentanyl with the intent to distribute it; and two, that the Defendant knowingly and intentionally possessed a firearm in furtherance of that drug trafficking crime.

*Id.* at 24:2–7. Counsel for the Government also summarized the conduct underlying the charged offenses. *Id.* at 27:14–29:2. The Court then inquired of Petitioner:

> THE COURT: Mr. Diaz, you heard the prosecutor summarize what the Government believes you did. Do you have any disagreement with what he said?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: So on the dates in question, you possessed Fentanyl with the intent to distribute it?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you knew that that was a controlled substance?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you, in furtherance of that, you possessed a firearm?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 29:3–15. After the extensive colloquy, the Court found that Petitioner was competent and knowingly and voluntarily entered his guilty plea with the assistance of capable counsel. *Id.* at 31:17–32:9. The Court therefore accepted Petitioner's plea. *Id.*

At Petitioner's sentencing on June 16, 2021, defense counsel sought a departure from the agreed-upon guidelines sentence range of 106 to 117 months of imprisonment, advocating for a total sentence of 60 months—the mandatory minimum sentence that the Court could impose under Count Four. *See* Def.'s Sentencing Mem. at 1, *Diaz*, No. 3:19-cr-00059 (D. Conn. May 28, 2021). The Government likewise sought a below-guidelines sentence, advocating for a total sentence of 96 months of imprisonment. Gov't's Sentencing Mem. at 9, *Diaz*, No. 3:19-cr-00059 (D. Conn. June 4, 2021). The Court ultimately varied from the guidelines and sentenced Petitioner to 18 months of imprisonment on Count Three and 60 months of imprisonment on Count Four, to be served consecutively, for a total effective sentence of 78 months of imprisonment. Judgment at 1. Neither party objected to nor appealed the sentence.

One year after judgment entered, Petitioner filed the instant Petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**DISCUSSION**

Petitioner moves to vacate his conviction and sentence on the grounds that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. The Sixth Amendment "provides certain procedural safeguards to individuals who have been charged with crimes, including . . . 'the Assistance of Counsel.'" *United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir. 2020) (quoting U.S. Const. amend. VI). "Although the Sixth Amendment refers only to 'Assistance of Counsel,' it guarantees the right to *effective* assistance of counsel." *Id.* at 121 (emphasis in original) (internal citation omitted).

A petitioner making an ineffective assistance of counsel claim pursuant to the Sixth Amendment bears a heavy burden. The petitioner must demonstrate both that (1) "counsel's performance was deficient" and fell below an objective standard of reasonableness in light of

7

prevailing professional norms, and (2) "the deficient performance prejudiced the defense." *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). As to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (quotations omitted). And as to the second, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *Puglisi*, 586 F.3d at 215 (quotations omitted).

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (quotations omitted); *see also Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."). A petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within acceptable standards." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (brackets omitted) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Further, "[i]n the context of guilty pleas, the 'prejudice' prong requires the defendant to demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ajemian v. United States*, 171 F. Supp. 3d 206, 213 (S.D.N.Y. 2016) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

"The *Strickland* standard is highly demanding and rigorous" and an ineffective assistance of counsel claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (internal citations

and quotations omitted). "Although a District Court must hold an evidentiary hearing when presented with any potentially meritorious claim under section 2255, a hearing is not required when, 'viewing the evidentiary proffers . . . and record in the light most favorable to the petitioner,' it is clear that the petitioner has failed to establish a 'plausible claim of ineffective assistance of counsel.'" *Lake v. United States*, 465 F. App'x 33, 34–35 (2d Cir. 2012) (summary order) (quoting *Puglisi*, 586 F.3d at 213).

Petitioner claims that he was denied effective assistance of counsel during both the pretrial and sentencing phases of his criminal proceedings. *See* Mot. to Vacate at 5–6. The Government argues that Petitioner has failed to make the requisite showing to establish ineffective assistance under either prong of the *Strickland* test. *See* Gov't's Suppl. Mem. at 2, ECF No. 8. The Court agrees.

**Ineffective Assistance of Pretrial Counsel**

The Court first turns to Petitioner's claim that his counsel was constitutionally ineffective during the pretrial phase of his criminal proceedings. Petitioner asserts three alleged failures of his counsel prior to his plea of guilty: failure to "(1) Communicate with [Petitioner] and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt to negotiate a favorable Plea Agreement with a less harsh sentence." Mot. to Vacate at 5.

As to the first claim, Petitioner offers only conclusory allegations which are belied by the record. *See Banks v. N.Y. Dep't of Corr. Servs.*, No. 01 CIV. 3985 (RWS), 2001 WL 1448612, at *2 (S.D.N.Y. Nov. 15, 2001) (noting that a federal habeas "petition may be dismissed if it contains only vague or conclusory allegations" (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977))). For example, Petitioner claims that Attorney Buckley "failed to reasonably consult with [Petitioner]

9

about the means to be used to accomplish her objectives other than to push him into pleading guilty," Mem. in Supp. at 13, however he does not identify *what* information Attorney Buckley should have communicated to him that would have influenced his decision on whether to plead guilty. *Cf. Belloso-Ibarra v. United States*, No. 09 CIV. 8216 (SAS), 2010 WL 431904, at *5 (S.D.N.Y. Feb. 8, 2010) (finding that the petitioner's claim that counsel "failed to advise [the petitioner] as to all facts and law relevant to his decision to plead guilty" could be "dismissed summarily" because the petitioner "fail[ed] to assert any facts in support" of that claim).

Further, Petitioner's first claim is rebutted by his sworn statements at his change of plea hearing. A defendant's sworn admissions at a plea allocution "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. A district court is "entitled to accept a defendant's statements under oath at a plea allocution as true," *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997), and self-inculpatory statements made under oath at a plea allocution "are generally treated as conclusive in the face of the defendant's later attempt to contradict them," *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). Additionally, "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Courts within the Second Circuit have consistently credited defendants' plea allocutions over subsequent statements made while attempting to withdraw a plea or vacate a conviction. *See, e.g.*, *Hines v. Miller*, 318 F.3d 157, 159, 162–64 (2d Cir. 2003) (affirming district court's denial of habeas petition and finding that the defendant's earlier motion to withdraw his guilty plea was rightly denied because his claims contradicted his statements during the plea colloquy).

At his change of plea hearing, Petitioner acknowledged that he had reviewed with Attorney Buckley the possible penalties he faced, including the five-year mandatory minimum period of

10

incarceration for the firearm charge, and the fact that the mandatory minimum period of incarceration would be required to run consecutive to the sentence for the narcotics charge. COP Tr. at 6:7–7:13, 24:9–25:15. He acknowledged that he had an adequate opportunity to discuss his decision to plead guilty with Attorney Buckley, that he had read and reviewed the plea agreement, and that his decision to enter into the plea agreement was made without coercion of any kind. *Id.* at 7:7–9:3, 19:17–20:4. Moreover, he averred that his decision was both knowing and voluntary, having been made after consultation with Attorney Buckley. *Id.* at 29:16–32:9. The conclusory allegations to the contrary that Petitioner now attempts to put forth in the Petition do not warrant either a hearing or habeas relief.

As to Petitioner's second claim that Attorney Buckley failed to "conduct any kind of a reasonable independent pretrial investigation" or "research and properly prepare this case," Mem. in Supp. at 15–16, this claim is likewise precluded by Petitioner's guilty plea, *see Parisi*, 529 F.3d at 138 ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *Whitehead*, 943 F.2d at 233; *United States v. Branford*, 833 F. App'x 902, 904 (2d Cir. 2020) (summary order) ("If a defendant's guilty plea is knowing and voluntary, '[t]he cases are legion that a plea of guilty . . . is an admission of guilt and a waiver of all non-jurisdictional defects.'" (quoting *United States v. Doyle*, 348 F.2d 715, 718 (2d Cir. 1965))). Moreover, Petitioner "cannot establish an ineffective assistance of counsel claim under *Strickland* based on allegations that counsel failed to conduct an adequate investigation that [are] 'entirely conclusory' and '[a]bsent an identification of the issues that should have been investigated and a showing that such investigation would have led to' a different result." *Holland v. United States*, No. 3:11CV1868

JBA, 2014 WL 2940889, at *6 (D. Conn. June 30, 2014) (quoting *United States v. Herrera*, 186 F. App'x 109, 112 (2d Cir. 2006) (summary order)).[5]

Petitioner also appears to assert that Attorney Buckley failed to accurately advise Petitioner as to the elements of Count Four—possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Petitioner avers that, "[b]ecause he was legally carrying a firearm at the time of his arrest and the firearm was not used in the commission of his underlying crime, the 60-month" sentence for a violation of § 924(c) "is inappropriate." Mem. in Supp. at 14. He further argues that Attorney Buckley's failure to accurately explain the § 924(c) charge to him rendered his guilty plea unknowing and involuntary.[6] *Id.* In short, Petitioner alleges that, had Attorney Buckley "accurately explained the 924(c) charge" to him, "he would have not agreed to the charge as indicated in the plea deal." *Id.*

Petitioner misunderstands the applicable law. "A person may be convicted under § 924(c)(1)(A) for 'mere possession of a firearm' so long as 'that possession is in furtherance of a drug trafficking crime.'" *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (quoting *United States v. Lewter*, 402 F.3d 319, 321 (2d Cir. 2005)). "[T]he requirement in § 924(c)(1) that the gun

---

[5] Petitioner's third claim that counsel failed to negotiate a favorable plea deal is speculative, conclusory, and rebutted by the record. As the Government observes, the Government agreed to the dismissal of Counts One and Two of the Indictment in exchange for Petitioner's guilty plea. *See* Gov't's Suppl. Mem. at 13. Both Counts One and Two implicated mandatory minimum periods of incarceration of five years, which would have increased Petitioner's mandatory minimum period of incarceration to ten years had he gone to trial and been convicted. The Government agreed to a downward variance from the applicable guideline range and agreed to recommend a three-level reduction in Petitioner's adjusted offense level for acceptance of responsibility. *See id.*; Gov't's Sentencing Mem. at 9. Accordingly, counsel's negotiation of the plea agreement falls squarely within the presumption of reasonableness afforded under *Strickland*. In addition, and perhaps most notably, Petitioner cannot establish prejudice as to this claim by demonstrating that he would have proceeded to trial and obtained a more favorable outcome had he not pleaded guilty.

[6] The Government accurately asserts that Petitioner may not collaterally attack the knowing and voluntary nature of his guilty plea through a § 2255 habeas petition without first challenging it on direct appeal. *See* Gov't's Suppl. Mem. at 8; *Bousley v. United States*, 523 U.S. 614, 621 (1998). As Petitioner did not appeal his sentence, and indeed waived his right to appeal on these grounds, the Court need not consider any potential argument that Petitioner's plea was not knowing and voluntary here. Notwithstanding, to the extent Petitioner is attempting to claim that his guilty plea was the result of Attorney Buckley's ineffective assistance due to her alleged failure to apprise him of the elements of Count Four, the Court addresses that claim.

be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001) (holding that the evidence was sufficient to sustain a § 924(c) conviction where the jury could have found that the defendant kept a shotgun in proximity to the window from which he sold drugs). "Although courts look at a number of factors to determine whether such a nexus exists, the ultimate question is whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking. . . . Thus, while no conviction would lie for a drug dealer's innocent possession of a firearm, a drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself." *Snow*, 462 F.3d at 62–63 (cleaned up).

The facts in this case, which Petitioner does not challenge here, are that Petitioner was carrying a loaded firearm on his person at the time that he was engaging in narcotics sales, that Petitioner also possessed three cell phones and over $1,400 in U.S. currency, and that Petitioner's firearm permit was allegedly located in a black bag on the front seat of his vehicle that also contained hundreds of bags of fentanyl. Further, at Petitioner's home, officers discovered more firearms and ammunition, which were stored in the same areas that more narcotics were found. As found by the Court, these uncontested facts provided a more than sufficient factual basis for Petitioner's guilty plea. Counsel's advice to Petitioner to accept a guilty plea was therefore not deficient by any measure, let alone under the rigorous *Strickland* standard. *See Sanchez v. United States*, No. 17 Civ. 4078 (RMB), 2019 WL 125949, at *5 (S.D.N.Y. Jan. 8, 2019) (noting that counsel was not ineffective for advising a client to plead guilty where the evidence against that client was substantial).

Further, it is worth observing that Petitioner's after-the-fact characterization of what he understood at the time of his plea is also belied by the record. The Government placed the elements of Count Four on the record at the change of plea hearing; the elements of Count Four are described in Petitioner's written plea agreement; Petitioner confirmed for the Court, under oath, that he had read the agreement and reviewed the agreement with Attorney Buckley; and, based on Petitioner's answers to the Court's questions during his change of plea hearing, the Court found Petitioner's plea to be knowing and voluntary. Indeed, the Court confirmed with Petitioner that he did, in fact, possess a firearm in furtherance of his drug trafficking activities. Petitioner may not now claim that he did not understand what it meant to possess a firearm "in furtherance" of a drug trafficking crime when he repeatedly, under oath, endorsed that he understood that element and was, in fact, guilty of that crime. *See Ajemian*, 171 F. Supp. 3d at 211 ("Where a defendant states under oath that he understands the charges against him and voluntarily chooses to plead guilty, 'a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'" (quoting *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001))).

Thus, the Court concludes that Petitioner's claims that he received ineffective assistance of counsel during the pretrial phases of his criminal proceedings are without merit, as Petitioner has failed to allege any facts showing that his counsel's performance was constitutionally deficient or that he was prejudiced by any allegedly deficient performance.

**Ineffective Assistance of Counsel at Sentencing**

Petitioner also contends that his counsel was constitutionally ineffective during his sentencing insofar as counsel allegedly failed to (1) correctly discuss and explain the PSR to him

prior to the sentencing hearing, (2) file substantive objections to the PSR, and (3) object to his sentence being substantively unreasonable. Mot. to Vacate at 6.

Again, Petitioner's allegations are conclusory and largely stem from Petitioner's misunderstanding of the law that using a firearm "in furtherance of" a drug trafficking crime for purposes of § 924(c) requires something more than the facts to which Petitioner stipulated. *See* Mem. in Supp. at 23–26. As explained above, this is incorrect. Aside from this allegation, Petitioner does not allege what his counsel should have explained to him regarding the PSR—and again, he agreed at his sentencing that he went through the PSR with his counsel. *Cf. Baker v. United States*, No. 3:10CV961 (AWT), 2013 WL 6834761, at *6 (D. Conn. Dec. 20, 2013) (finding that the petitioner's ineffective assistance of counsel claim based on his counsel's alleged failure to timely provide him the PSR was undermined by his acknowledgment at sentencing that "he and his attorney had ample time to review and discuss the PSR"). Nor does he allege what objections counsel should have lodged to either the PSR or his sentence. *Cf. Belloso-Ibarra*, 2010 WL 431904, at *5 (finding that the petitioner failed to establish that counsel was ineffective for failing to challenge the petitioner's sentence where the petitioner failed to specify the grounds on which counsel should have argued that the sentence was unconstitutional).

Moreover, Petitioner does not allege, and the Court cannot identify, any basis upon which Petitioner's sentence could be considered substantively unreasonable. The parties and the Court agreed that Petitioner's Sentencing Guidelines range was 106 to 117 months of imprisonment. However, at sentencing, Petitioner's counsel argued for a below-guidelines sentence, and, to counsel's credit, Petitioner was ultimately given a significantly below-guidelines sentence of 78 months of imprisonment. Although this is not dispositive of the issue of whether Petitioner's sentence was substantively reasonable, it is certainly persuasive. *United States v. Messina*, 806

F.3d 55, 66 (2d Cir. 2015) ("While we do not presume that a Guidelines sentence is necessarily substantively reasonable, that conclusion is warranted in the overwhelming majority of cases, and thus especially when, as here, a defendant challenges a *below*-Guidelines sentence." (internal citations and quotations omitted)). And, coupled with Petitioner's failure to identify any authority or basis upon which to find that his sentence was substantively unreasonable, the Court declines to do so here. Thus, Petitioner can neither show that his counsel's performance was inadequate at the sentencing stage nor that he was prejudiced by any such deficient performance.

**CONCLUSION**

For the foregoing reasons, no evidentiary hearing is necessary, and Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Court shall not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of May 2023.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE